IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES *ex rel*. ELESE G. LUPULOFF<br>14005 Gray Birch Way<br>Rockville, MD 20850<br><br>            Plaintiff/Relator,<br><br>        v.<br><br>AINS, INC.,<br>806 W. Diamond Avenue<br>Suite 400<br>Gaithersburg, MD 20878<br><br>and<br><br>MOHINDER GOSWAMI<br>806 W. Diamond Avenue<br>Suite 400<br>Gaithersburg, MD 20878<br><br>            Defendants. | UNDER SEAL<br><br>Civil Action No. _____ |

## **COMPLAINT**

Plaintiff/Relator Elese G. Lupuloff, for her complaint against defendants AINS, Inc. ("AINS") and Mohinder Goswami ("Goswami") (jointly, "Defendants") alleges as follows:

1.      This is a qui tam action to recover damages and civil penalties on behalf of the United States (the "Government") arising from false statements and claims made or caused to be made by the Defendants in violation of the False Claims Act, 31 USC §§ 3729 *et seq*. (the "FCA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) & (c) and 31 U.S.C. §3732(a). As described in more detail below, Defendants have transacted business in the District of Columbia, and acts giving rise to claims under the FCA took place in the District of Columbia.

4. This case is not based on a public disclosure within the meaning of the FCA, and Lupuloff is the original source of the allegations contained herein.

## PARTIES

5. Relator Elese G. Lupuloff is a former employee of AINS and resident of Montgomery County, Maryland.

6. Defendant AINS is a corporation, incorporated under the law of the State of Maryland, with its primary offices and headquarters in Gaithersburg, Maryland. AINS develops, sells, implements, services and supports software packages, primarily to federal government agencies, including many agencies located in the District of Columbia. AINS was created by defendant Goswami in 1988, and has been in business continually since then.

7. Goswami is the founder, owner and Chief Executive Officer of AINS. He is also the founder, owner, and the Chief Executive Officer of AINS India Private Ltd. ("AINS India"), a company based and operated in Hyderabad, India. Goswami personally manages and directs the operations of both AINS and AINS India.

8. The United States is herein named a Plaintiff pursuant to the False Claims Act, 31 U.S.C. §3729, *et seq.*, as funds of the United States have been directly or indirectly disbursed and awarded to defendant AINS, as a result of the knowingly false claims, records and statements alleged in this Complaint made by or caused to be made by Defendants.

**FACTS**

9. Paragraphs 1 through 8 are incorporated herein by reference.

10. Lupuloff has spent many years as a project manager for various companies, including companies that engage in government contracting. She was hired by AINS in September, 2015, and worked for AINS from September 28, 2015, through August 5, 2016. Her title during her employment with AINS was Project Manager.

11. During her time as a Project Manager at AINS, Lupuloff worked on three different projects, all of which were pursuant to contracts with agencies of the Government. As a result, Lupuloff learned of, and became personally familiar with, how AINS staffed its government contract projects, how AINS employees recorded their daily time, how AINS billed its government agency clients, and how AINS used India-based employees of AINS India to work on its government contracts projects.

12. During her time as a Project Manager at AINS, Lupuloff had frequent contact with AINS management, including direct personal contact with defendant Goswami. As a result, Lupuloff learned of, and become personally familiar with, defendant Goswami's involvement in and knowledge of the management of government contracts projects, including how AINS used India-based employees of AINS India to work on its government contracts projects.

13. As discussed in more detail below, Lupuloff had discussions with Goswami in which he acknowledged the wrongdoing alleged in this Complaint, and made clear to Lupuloff that it was not to be disclosed to the Government customers.

14. As a result of those discussions with Goswami, and other indications that the corporate culture of AINS was unethical and promoted fraud on its Government customers, and because of her concerns that she was being asked to help with that fraud and that she could not keep her job with AINS unless she continued to do so, Lupuloff made the decision to leave AINS and seek employment elsewhere. She voluntarily resigned her job at AINS in August, 2016, to take a new job with a different employer.

15. The fraud that Lupuloff witnessed came in two primary forms: (1) lying to the Government about how many hours AINS employees worked on a project; and (2) lying to the Government about who was doing the work on a project.

Fraudulent Reporting of Hours

16. Many contracts that AINS obtained from the Government are "time and materials" contracts. Such contracts typically have "caps"—meaning a maximum amount that the contractor is permitted to bill the Government—but the contractor is required to bill the Government only for time actually spent, and for materials actually used, and the Government is obligated to pay only those amounts.

17. AINS has a practice of sending invoices to its Government agency customers that do *not* reflect the actual time spent by its personnel, but that instead are falsified to reflect however much time is necessary to obtain the full "cap" amount of the particular contract.

18. Lupuloff witnessed this practice on the projects that she managed or helped manage while employed at AINS. During her time at AINS, Lupuloff worked on three different "time and materials" projects for three different agencies: (1) the Department of Commerce, International Trade Administration (the "ITA Project"); (2) the Department of Justice, Executive Office of Immigration Review (the "EOIR Project"); and (3) the Department of State, Office of Risk Analysis and Management (the "RAM Project"). The ITA Project and the RAM Project were for Government customers located in the District of Columbia; the EOIR Project was for a Government customer based in Virginia.

19. All three of these projects were pursuant to "time and materials contracts," and in connection with all three projects AINS sent invoices to the agency clients that indicated that particular personnel had worked numbers of hours that those personnel did not actually work.

20. AINS utilizes time-keeping software, and requires all personnel who work on contracts to record their time on a daily basis, and to indicate how much time they worked on particular contracts each day. Thus, AINS has an internal system for tracking hours, and allocating those hours to particular projects.

21. However, AINS has a routine practice of reporting hours to the Government, via invoices, that are not accurate. It does this in two ways. First, in some cases, AINS alters the hours that its employees entered at the end of the month (or other billing cycle, depending on the project) so that billing targets are hit for particular projects. Second, in some cases, the Project Managers overseeing a particular contract will calculate how many hours are needed to be billed per billing cycle (a so-called "burn rate") to capture the full

"value" of a contract up to its cap, and then instruct the AINS employees working on the contract to bill that number of hours regardless of whether the hours were actually worked.

22.     Lupuloff learned of these practices, and was forced to participate in them, during the period of her employment at AINS.  She was directed to make "burn rate" calculations, and to instruct the people she supervised to bill pursuant to that "burn rate," by Quyen Le, who was a long-time AINS employee with the title Director of Product Services.

23.     In addition, Lupuloff was required to participate in monthly meetings with Goswami and another AINS executive, to review the status of each of her projects.  In these meetings, she was required to report how the projects were performing as against the "caps," and she was instructed by Goswami and the other AINS executive to make sure that "nothing was left on the table," meaning that AINS should bill up the "caps" regardless of how much work was actually being done.

24.     In addition, Lupuloff would be called into meetings periodically with Quyen Le and the AINS Accounting Manager, Rajershree Poshtiwala, and instructed to alter time that had previously been entered into the AINS time-keeping system.  Le and Poshtiwala told Lupuloff that this needed to be done in order to hit monthly targets under the contracts that Lupuloff was managing.  Both Le and Poshtiwala were long-time AINS employees, and Lupuloff came to understand that this practice of altering time entries to meet contract targets was something that AINS had been doing as a regular practice for many years.

25.     Lupuloff witnessed falsification of hours occurring in connection with the ITA Project.  The monthly invoices sent by AINS to the Government for this project indicate substantial hours worked by Swadeesh Madlapalli and Varinder Bagga as "developers" and

6

Brendan Conway as a "business analyst." However, the hours reflected in those invoices were much higher than the hours actually worked by these individuals on the project. Bagga, in particular, worked no hours on the ITA Project, yet falsely billed 60 hours per month to the project for the months of January, February and March of 2016. Madlapalli worked very few hours on the ITA Project, as his only role was to act as a go-between with the employees at AINS India who were actually doing most of the development work; yet, AINS falsely billed substantial hours for Madlapalli. Conway spent very little time on the ITA Project, yet AINS falsely billed substantial hours under his name as well.

26. Lupuloff was the Deputy Project Manager for the ITA Project. The Project Manager for the ITA Project was Quyen Le. Lupuloff had numerous discussions with Le about the false billing of hours to the ITA Project, including the hours billed by Bagga. Le nonetheless approved the false invoices sent to the Government for the ITA Project.

27. Lupuloff also had a face-to-face conversation with defendant Goswami in early 2016, in which she expressed concerns about the time that Bagga was billing to the ITA Project even though he was not actually doing work on the project. Rather than support her efforts to bill truthfully, or to take steps to avoid fraudulent billing, Goswami again simply instructed her not to leave any money on the table and to "not worry about it" since the AINS India employees (who were never identified on any invoice to the Government) were "getting it done." Lupuloff understood from this meeting that Goswami not only knew about, but affirmatively sanctioned, the fraudulent billing of Bagga's time.

28. Lupuloff also witnessed falsification of hours occurring in connection with the EOIR Project. The monthly invoices sent by AINS to the Government for this project

indicate substantial hours worked by Suresh Basheerbad. But Basheerbad's only role in the project was as a conduit to developers in India, and he personally spent very little time on the project.

29. Lupuloff also witnessed falsification of hours in connection with the RAM Project. The monthly invoices sent by AINS to the Government for this project indicate substantial hours worked by Joseph Gallahan. However, the hours reflected in those invoices were much higher than the hours actually worked by Mr. Gallahan on the project. In addition, Lupuloff was told that her own hours had been fraudulently changed by a member of AINS accounting staff to indicate that she had worked more hours than she had actually recorded herself. Those fraudulently inflated hours were subsequently billed to the Government. When Lupuloff questioned AINS Accounting Manager, Rajershree Poshtiwala about this, Poshtiwala responded that "this is what Moe wants." "Moe" is the nickname by which defendant Goswami is known within AINS; accordingly, Poshtiwala was referring to defendant Goswami.

30. At the time that AINS bid on the contracts for these three projects, AINS already had a routine practice of billing the government for fraudulently inflated hours. Accordingly, at the time of those bids, AINS already planned and intended to send the Government fraudulent invoices for these three projects as well. Had the Government known this, it would not have awarded these contracts to AINS in the first place. Accordingly, AINS fraudulently induced the Government to award these contracts to AINS.

31. Had the Government known that the AINS invoices contained fraudulently inflated hours, the Government would not have paid those invoices, and may have terminated AINS from the project.

32. The practice at AINS of fraudulently inflating hours to meet contract caps in time and materials contracts predated the time that Lupuloff became an AINS employee, and also was almost certainly occurring with respect to time and materials contracts being managed by other Project Managers during the time of her employment. Thus, the fraud she witnessed in connection with the three projects that she worked on almost certainly occurred in connection with other Government contracts, both before and during the time of her employment at AINS.

Fraudulent Reporting of Personnel

33. Two of the projects that Lupuloff managed—the EOIR Project and the ITA Project—had "named resources" requirements in the contracts. This means that the agency clients had to approve the specific people who could perform services under the contracts.

34. With respect to the EOIR Project, the contract with the Department of Justice also had security clearance and residency requirements for anyone performing services under the contract. That contract required AINS to identify the people who would perform under the contract to the Department of Justice in advance so that the Department of Justice could confirm that those people had the necessary security clearances, and met the residency requirements. The contract forbade AINS to use any other personnel to perform under the contract.

35. AINS, however, routinely ignored these important, material requirements. When development work needed to be done on these projects, much of the work would actually be done by employees of AINS India who had never been identified to the agency clients, and who met neither the security clearance nor residency requirements of the EOIR Project contract.

36. Had the Government known that AINS intended to use employee of AINS India to perform work on these contracts, the agencies at issue would not have awarded the contracts to AINS in the first place. Accordingly, AINS fraudulently induced the Government to award these contracts to AINS.

37. In addition, in the invoices sent by AINS to the Government for these contracts, AINS did not list any of the AINS India employees, but instead only listed AINS employees based in the United States who had previously been disclosed to, and approved by, the agencies. Those invoices typically had fraudulently inflated hours shown for the U.S.-based employees to make it seem as if those employees were the ones actually doing the work. Had the Government known that the AINS invoices were fraudulent in this respect, the Government would not have paid those invoices, and may have terminated AINS from the projects.

38. Defendant Goswami personally directed the use of AINS India employees to perform under the "named resources" contracts, and did so knowing that the use of those AINS India employees would violate those contracts, and also knowing that AINS would take steps to hide those violations from the Government.

39. Lupuloff had several face-to-face conversations with Goswami in which she raised her concerns about the legality of using AINS India employees to perform under the EOIR Project and ITA Project contracts. In response, Goswami did *not* deny that this was occurring or that it was illegal. Rather, his response to Lupuloff was to tell her "we don't mention India," and, with respect to the Government clients, "they don't need to know."

40. Defendant Goswami personally profited from this fraudulent conduct. The employees of AINS India are paid significantly less than the employees of AINS. Thus, by off-shoring the work on the EOIR Project and ITA Project to AINS India employees, that work cost Goswami less. Then, by simultaneously inflating the hours of AINS employees shown on the invoices to the Government, he was able to obtain income as if the work had actually been performed in the United States by AINS employees.

41. The practice of using AINS India employees to perform work on contracts between AINS and the Government clearly pre-dated the time when Lupuloff became employed by AINS. And during her employment with AINS, it was occurring not only with respect to the three projects she managed, but also with respect to other projects being managed by other Project Managers. Accordingly, the fraud by AINS that Lupuloff personally witnessed with respect to the EOIR Project and ITA Project had undoubtedly also occurred, both before and during the time of her employment by AINS, in connection with other projects governed by "named resources" Government contracts.

Examples of Fraudulent Invoices

42. Examples of invoices sent by AINS to the Government for the ITA Project that contain false statements include, but are not limited to, Invoice # 914203 dated January 12, 2016.

43. Examples of invoices sent by AINS to the Government for the EOIR Project that contain false statements include, but are not limited to, Invoice # 914107 dated May 19, 2016, Invoice # 914108 dated June 17, 2016, and Invoice # 914109 dated July 19, 2016.

44. Examples of invoices sent by AINS to the Government for the RAM Project that contained false statements include, but are not limited to, Invoice # 914702 dated May 19, 2016, Invoice # 914703 dated June 17, 2016, and Invoice # 914704 dated July 14, 2016.

45. These invoices are given as examples only, and are not intended to limit the scope of the claims being made in this Complaint. The types of fraud outlined in this Complaint were a routine occurrence at AINS, both before and during the period of Lupuloff's employment, and AINS therefore violated the False Claims Act in connection with projects other than just the three on which she worked.

**COUNT ONE: 31 U.S.C. §3729(a)(1)(A)**

46. Paragraphs 1-45 are incorporated herein.

47. Defendants AINS and Goswami knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to officers or employees of the United States Government.

48. These false and fraudulent claims for payment include the invoices identified herein, as well as other invoices submitted by AINS to the Government in connection with the ITA, EOIR and RAM Projects.

49. These false and fraudulent claims for payment also include invoices submitted by AINS to the Government in connection with other contracts in which AINS knowingly inflated hours, or knowingly flouted "named resource" requirements.

50. As a result of these false or fraudulent claims, the United States Government suffered damages.

## COUNT TWO:  31 U.S.C. §3729(a)(1)(B)

51. Paragraphs 1-50 are incorporated herein.

52. Defendants AINS and Goswami knowingly made, used, or caused to be made or used, false records and statements material to the United States Government's payment of false or fraudulent claims.

53. The false records and statements included, but may not be limited to, misrepresentations made in:

> a. bids by AINS for time and materials contracts, submitted at a time when AINS already had a routine practice of falsifying hours in its invoices in order to maximize the amounts that it would receive under those contracts;
>
> b. bids by AINS for contracts with a "named resource" provision, submitted at a time when AINS already had a routine practice of using

13

        employees of AINS India to perform under such contracts without naming those employees to the Government.

    c. invoices submitted by AINS to the Government, as identified in Count I.

54. As a result of these false records or statements, the United States Government suffered damages.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief:

1. A permanent injunction requiring Defendants to cease and desist from violating the federal False Claims Act;

2. Judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of the Defendants' unlawful conduct;

3. Civil monetary penalties for each false and fraudulent claim submitted to the United States by Defendants;

4. An award to Relator pursuant to 31 U.S.C. §3730(d);

5. An award of reasonable attorneys' fees, costs, and expenses;

6. Such other relief as the Court deems just and equitable.

## **JURY DEMAND**

Relator hereby demands a jury trial on all issues triable to a jury.

Respectfully submitted,

/s/ Jonathan K. Tycko

JONATHAN K. TYCKO
ANDREA R. GOLD
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036
(202) 973-0900
(202) 973-0950 (fax)
jtycko@tzlegal.com
agold@tzlegal.com

*For Plaintiff/Relator Elese G. Lupuloff*

15